# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| TANNYS WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case Number: 4:17-cv-00946-JHE |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION[1]

Plaintiff Tannys Williams ("Williams") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for supplemental security income ("SSI"). (Doc. 1). Williams timely pursued and exhausted her administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

## I. Factual and Procedural History

On November 24, 2014, Williams protectively filed an application for SSI, alleging disability beginning November 30, 2013. (Tr. 176-181). The claim was denied initially on January 27, 2015. (Tr. 103-106). Thereafter, Williams filed a written request for hearing on March 3, 2015. (Tr. 111-113). Williams appeared and testified at a hearing on February 2, 2016. (Tr. 25-

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 10).

86). On April 20, 2016, the Administrative Law Judge ("ALJ") found Williams had not been under a disability and denied Williams' claim. (Tr. 18-19). Williams sought review by the Appeals Council, but it declined her request on April 14, 2017. (Tr. 1-5). On that date, the ALJ's decision became the final decision of the Commissioner. On June 6, 2017, Williams initiated this action. (*See* doc. 1).

Williams was twenty-three-years-old on the alleged onset date, and twenty-five-years-old when she testified before the ALJ. (Tr. 32, 176, 204). Williams has a high school education and past relevant work as a cleaner. (Tr. 18, 203, 205).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. "Substantial evidence may even exist contrary to the findings of the ALJ, and [the reviewing court] may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the

---

[2]In general, the legal standards applied are the same whether a claimant seeks Disability Insurance Benefits ("DIB") or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

findings cannot be overturned." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). However, the Court reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

3

(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Williams had not engage in substantial gainful activity since November 18, 2014, the application date. (Tr. 12). At Step Two, the ALJ found Williams has the following severe impairments: left eye blindness secondary to congenital optic nerve damage; a history of attention deficit disorder; a bipolar disorder, not otherwise specified; an anxiety disorder, not otherwise specified; and alcohol dependence in partial sustained remission. (Tr. 12-13). At Step Three, the ALJ found Williams did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13-15).

Before proceeding to Step Four, the ALJ determined Williams' residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined that Williams had the RFC to perform a full range of work

4

at all exertion levels but with the following non-exertional limitations: She should avoid exposure to industrial hazards including working at unprotected heights, working in close proximity to moving dangerous machinery, the operation of motorized vehicles and equipment. She should not be required to perform work activities that require binocular vision, depth perception or fine visual acuity. (Fine visual acuity was defined for purpose of this decision as required reading of printed material with less than 12 point font.) She can perform simple routine tasks requiring no more than short simple instructions and simple work-related decision making with few work place changes. She can have occasional interactions with co-workers and supervisors and no interactions with members of the general public. (Tr. 15-18).

At Step Four, the ALJ determined Williams was capable of performing her past relevant work as a cleaner. (Tr. 18). Therefore, the ALJ determined Williams has not been under a disability and denied her claim. (Tr. 18-19).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Williams contends that (1) the ALJ improperly discounted opinion evidence from Dr. Robert Estock, the State agency reviewing consultant, and Dr. June Nichols the consultative examiner, (2) the ALJ should have ordered another psychiatric examination when Williams was

5

no longer pregnant, and (3) the ALJ's decision that Williams could return to her past work is not supported by substantial evidence. (Doc. 12 at 11-15). Having reviewed the parties' briefs and the record evidence, substantial evidence supports the ALJ's determination that Williams failed to demonstrate a disability, and the ALJ applied the proper standards to reach this conclusion.

**A. The ALJ's Treatment of the Psychological Opinion Evidence**

Williams asserts the ALJ erred when he accorded "limited weight" to Dr. Estock's mental residual functional capacity assessment and to Dr. Nichols' supporting assessment. (Doc. 12 at 13). The ALJ bears the responsibility for assessing the extent of a claimant's work-related abilities and limitations based on all relevant evidence in the record, including the medical opinions submitted by any treating, examining, or non-examining source. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ must give the opinion of a treating physician substantial or considerable weight, unless there is "good cause" to reject the opinion, such as where the opinion is conclusory, not bolstered by the evidence, or inconsistent with the record. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ must articulate the reasons for giving less weight to a treating physician's opinion, and failure to do so is reversible error. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Standing alone, a non-examining physician's report cannot constitute substantial evidence to contradict a treating source's opinion. *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). However, state agency medical and psychological consultants' opinions may be entitled to greater weight than treating source opinions if such opinions are better supported by evidence in the record. *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 874 (11th Cir. 2011). To this end, the court "will not second guess the ALJ about the weight the treating physician's opinion

deserves so long as [the ALJ] articulates a specific justification for it." *Hunter v. Comm'r of Soc. Sec.*, 808 F.3d 818, 823 (11th Cir. 2015).

In contrast to opinions from treating physicians, an ALJ is not required to defer to an examining physician's report. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, an ALJ must consider all medical opinions in a claimant's case record, together with other relevant evidence. *McClurkin v. Social Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (citing 20 C.F.R. § 404.1527(b)). The ALJ is required to "state with particularity the weight given to different medical opinions[,including those from non-treating physicians,] and the reasons therefor" so that the reviewing court can determine if the ALJ's decision was rational and supported by substantial evidence. *Id.* (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011)). "Therefore, when the ALJ fails to state with at least some measure of clarity the grounds for his decision, [the court] will decline to affirm simply because some rationale might have supported the ALJ's conclusion." *Id.* (quoting *Winschel*, 631 F.3d at 1179).

The ALJ assigned limited weight to portions of State Agency psychiatrist Dr. Estock's opinions based on his mental residual functional capacity assessment (tr. 93-99) and to consultative examiner Dr. Nichols' opinions based on her assessment (tr. 306-10). (Tr. 17). Specifically, the ALJ found that Dr. Estock's opinion that Williams "may miss 1-2 days of work per month due to Bipolar issue" was speculative and not supported by the record. (*Id.*). Noting that Dr. Estock's findings were based in part on Dr. Nichols' assessment, the ALJ recognized that Dr. Nichols' assessment was conducted when Williams was nine months pregnant and had reportedly been off her medication for six months (because she could not take her prescribed medication while pregnant). (*Id.*). Without such medication, the ALJ noted Williams was "untreated" at the time of Nichols' assessment, and pointed to Dr. Estock's notation that Williams' symptoms should

7

improve with treatment. (*Id.*). Thus, the ALJ found Dr. Nichols' assessment overstated the severity of Williams' restrictions and was based only "on a snapshot of her functioning," when she was not medicated because of pregnancy. (*Id.*). Dr. Nichols also admitted that her assessment of Williams was due in part to the fact Williams was not involved in any treatment plan at the time. (Tr. 310).

It was reasonable for the ALJ to discount Dr. Estock and Dr. Nichols' opinions, which both relied on the fact Williams was not involved in a treatment plan at the time of Dr. Nichols' assessment. During the examination, Williams stated that she "hadn't been on any medication in six months and [she could] tell the difference." (Tr. 308). Thus, it was reasonable for the ALJ to conclude that, if Williams were taking her prescribed medications for bipolar disorder, her limitations would be less than Dr. Nichols and Dr. Estock opined.

Additionally, in assigning "limited weight," the ALJ also noted that Dr. Estock recognized that Dr. Nichols' assessment relied heavily on Williams' subjective reports, which were not consistent with the totality of the evidence, and opined that Dr. Nichols' conclusions overestimated the severity of Williams' limitations. (Tr. 17, 98-99). The record includes treatment notes indicating that Williams was a no show for an appointment in June 2015, reports Williams was not taking her medication as prescribed because she did not like the way it made her feel in June and July 2015, and that after her July 2015 appointment, Williams was advised to follow-up in six months. (*See* tr. 17, 424-30). As the ALJ noted, advice for a six-month follow-up does not indicate any debilitating mental symptoms or serious functional limitations. (Tr. 17).

Accordingly, the ALJ's decision to accord limited weight to potions of Dr. Estock's opinions (including that Williams "may miss 1-2 days of work per month due to Bipolar issue") and to Dr. Nichols' opinions is supported by substantial evidence. The ALJ stated with

8

particularity the weight accorded and provided the reasons for discounting such opinions. Williams' contention that the ALJ rejected such opinions "because Dr. Nichols only saw [Williams] at the time she was nine months pregnant and could not take her medications" misstates the ALJ's rationale. To the contrary, the ALJ discounted such opinions because, among other things, substantial evidence, including statements from Williams, showed treatment would improve Williams condition – treatment she could take part in after her pregnancy. *See* 20 C.F.R. § 404.1505(a) (The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.").

For the reasons outlined above, the ALJ did not err when he accorded portions of Dr. Estock's opinions and Dr. Nichols' opinions "limited weight."

### B. Requirement to Further Develop the Record

Williams contends the ALJ should have further developed the record by ordering another consultative examination after her pregnancy when she was taking her medicine. (Doc. 12 at 14). Although the ALJ has an obligation to develop a full and fair record, there must be a showing of prejudice before the reviewing court can find that the claimant's right to due process was violated to such a degree that remand for further development is warranted. *Graham v. Apfel*, 129 F.3d 1420, 1422-23 (11th Cir. 1997). Prejudice exist where the record contains evidentiary gaps that may cause the ALJ to reach an unfair determination due to the lack of evidence. *Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995). There is no such prejudice in this case. The record was fully developed such that the ALJ made an informed decision that Williams was not disabled.

As an initial matter, an ALJ is not required to order a consultative examination when there

9

is sufficient evidence in the record for the ALJ to make an informed decision. *See Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001). Here, there is sufficient evidence for the ALJ to make an informed decision, and Williams' fails to show any prejudice from the lack of another consultative examination. As explained above, the ALJ stated good cause for according Dr. Estock and Dr. Nichols' opinions limited weight and not accepting all of the opined limitations. However, with that caveat, their findings demonstrate that, even without mediation, Williams was not disabled. The ALJ noted that, even without medication, Dr. Nichols found Williams mental processing speed was adequate, Williams' recent and remote memory functions appeared "grossly intact," Williams thinking was abstract in nature, and her thought processes were within normal limits. (Tr. 14, 309). The ALJ further noted that Dr. Nichols found "no evidence of confusion, loose associations, tangentiality, flight of ideas, or thought blocking. (*Id.*). The ALJ noted Williams' judgment and insight were both "considered to be good," and she was estimated to be functioning within the average range of intellectual ability. (*Id.*). Additionally, even without medication, Dr. Estock opined Williams would have no more than a moderate restriction in activities of daily living and in social functioning; mild difficulties in concentration, persistence, or pace; and no episodes of decompensation of extended duration. (Tr. 14, 93-94). Dr. Estock also opined that, when Williams resumed treatment and medication following her pregnancy, he expected limitations to be less intrusive, stating Williams "should be able to continue treatment after the birth of her baby. With treatment her symptoms should improve." (Tr. 17, 94-95). Notably, when seen by a psychiatrist on July 14, 2015, after her pregnancy was over, Williams was advised to follow-up in six months, which the ALJ reasonably found does not reflect any debilitating mental symptoms or serous functional limitations. (Tr. 17, 425).

The evidence of record was fully developed and supported a finding Williams was not

disabled. Williams fails to demonstrate how the alleged evidentiary gap (a consultative examination when she was taking her medicine) caused the ALJ to reach an unfair determination. *Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995).

### C. The ALJ's Decision that Williams Can Return to Her Past Work

Williams' contention that "the ALJ's decision that [Williams] can return to her past work is not supported by substantial evidence" (doc. 12 at 15), is without merit. Williams' entire argument is based on opinions from Dr. Estock and Dr. Nichols, which the ALJ properly accorded limited weight for the reasons explained above. Furthermore, also as explained above, Dr. Estock's opinion that Williams' symptoms "should improve" with treatment is not speculative, but instead supported by the record, including Williams' report that she could tell the difference when she wasn't taking her medication. (Tr. 308).

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Williams' claim for supplemental security income is **AFFIRMED**, and this action **DISMISSED WITH PREJUDICE**.

DONE this 11th day of September, 2018.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE